IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRIS A. PETRI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16 C 9114 |
| | ) |
| PNC FINANCIAL SERVICES GROUP, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant PNC Financial Services Group's (PNC) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

**BACKGROUND**

On June 2, 2014, Plaintiff Chris A. Petri (Petri) went to PNC's location in St. Charles, Illinois and inquired about the availability of a 1% interest rate for certain investment accounts. Petri allegedly met with Susan Featherstone (Featherstone), the branch Vice President, and Featherstone allegedly confirmed that such an interest rate would be available to Petri. Petri allegedly opened an account that day (7903 Account). Petri also subsequently opened accounts on July 31, 2014 (8195 Account)

1

and on August 1, 2014 (1963 Account).  Despite the fact that Petri signed documents indicating that the 1% interest rate was only for a 90-day promotional period and despite the fact that Petri was regularly sent notices indicating that fact to him, Petri claims that he believed that it would earn the 1% interest on the 7903 Account and the 1963 Account for an indefinite period of time.  After 90 days, the interest rate for the 7903 Account and the 1963 Account was allegedly reduced to 0.01%.  Petri allegedly contacted PNC and was informed that the 1% interest rate was only for an initial 90-day period.  Petri includes in his amended complaint a fraud in the inducement claim (Count I), a claim alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count II), a breach of oral contract claim (Count III), a breach of express contract claim (Count IV), and an unjust enrichment claim (Count V).  PNC now moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).  A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material

fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Local Rule 56.1

Petri denies a significant portion of PNC's statement of facts. Petri, however, has consistently failed to comply with Local Rule 56.1 in such denials. The Seventh Circuit has made clear that a district court can "require strict compliance with Local Rule 56.1. . . ." *Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016). If a party fails to comply with Local Rule 56.1 when responding to a statement of facts, "those facts are deemed admitted for purposes of the motion." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015)(internal quotations omitted)(quoting *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)). If a responding party fails to "cite to any admissible evidence to support facts presented in response" as required by Local Rule 56.1, "the facts presented" in the statement of facts are deemed to be undisputed." *Curtis*, 807 F.3d at 219. Petri has disputed a significant

3

number of facts provided in PNC's statement of material facts, but Petri has failed to comply with Local Rule 56.1 and provide citations to the record to support such denials. (RSF Par. 5-14, 18-22, 26-29, 33-34, 36-45). Such facts are therefore deemed undisputed.

Petri's responses also fail to comply with Local Rule 56.1 because they contain evasive responses. *See Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive responses fail to comply with Local Rule 56.1). For example, in PNC's statement of material fact PNC asserts that on June 9, 2014, it mailed a Rate Disclosure to Petri informing him that the 1% interest rate would only last for 90 days. (SF Par. 19-20). Petri responds: "Denied to the extent that Plaintiff received the 7903 Disclosures sporadically and received fewer than Defendant claims to have sent." (RSF Par. 19-20). Petri provides no admission or denial in regard to the specific mailed disclosure at issue, and makes additional argument that does not relate to the fact at issue. Another example is PNC's statement of fact indicating that the Account Agreement for Personal Checking, (SF Par. 18). Savings and Money Market Accounts included certain language and terms. Petri is unwilling to admit to such facts, stating: "Denied to the extent that Plaintiff never received the Account Agreement." (RSF Par. 18). Petri neither admits nor denies that the language and terms presented are accurate and instead makes additional arguments on issues not presented by PNC.

Petri also makes denials that are not supported with references to the record and arguments that incorrectly state the record. For example, PNC states in its

4

statement of facts that Petri "received statements for the three Accounts from PNC in the mail but he discarded them because he did not think he had opened checking accounts." (SF Par. 42). Petri responds: "Denied: Never was it demonstrated that Plaintiff discarded statements for the three Accounts." (RSF Par. 42). Petri himself in fact stated at his deposition that he discarded the statements. At Petri's deposition, he was asked "Do you recall getting anything in the mails from PNC?" (Pet. Dep. 63). Petri responded "Yes. I recall receiving some notices that are general notices that said something about checking account[s], which we do not have a checking account. So we discarded it." (Pet. Dep. 63). Therefore, the facts presented in PNC's statement of material facts in paragraphs 5-14, 18-22, 26-29, 33-34, and 36-45 are therefore deemed undisputed.

## II. Breach of Contract Claims

PNC contends that the allegations supporting the breach of contract claims are directly contradicted by the terms of the written contracts and are barred by the parole evidence rule. Under Illinois law, it is presumed that a written contract "speak[s] the intention of the parties who signed it, and their intentions must be determined from the language used." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 966 (Ill. App. Ct. 2004). In accordance with that presumption, the parole evidence rule generally bars: (1) "evidence of understandings not reflected in the contract, reached before or at the time of its execution, which would vary or modify its terms," and (2) "parol evidence of prior negotiations to create an 'extrinsic

5

ambiguity' where the parties to a contract have included an integration clause." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 637 (7th Cir. 2007).

In response to the instant motion, Petri concedes that in neither the Account Agreement for the 7903 Account (7903 Agreement) nor the Account Agreement for the 1963Account (1963 Agreement) guaranteed in writing that he would continue to receive 1% in perpetuity for the 7903 Account or the 1963 Account . (Resp. SJ 7-8); (RSF Par. 8). Petri claims that he never received a copy of the written contract, but he does not dispute the accuracy of the signature cards for the 7903 Agreement and 1963 Agreement (collectively referred to as "Agreements"), which PNC has included as exhibits to the instant motion. In the Agreements, Petri agreed to "be bound by the terms and conditions of PNC Bank's Account Agreement for Checking Accounts and Savings Accounts. . . ." (PNC Ex. B and C ). Petri does not dispute that PNC Bank's Account Agreement for Checking Accounts and Savings Accounts specifically provides the following:

> Your interest rate and annual percentage yield may change. At out discretion, we may change the interest rate on your Account at any time without notice to you.

(RSF Parl 18). Thus, the undisputed terms in writing in the Agreements did not guarantee Petri 1% interest on the Accounts any longer than 90 days. Recognizing that undeniable fact, Petri has apparently abandoned the breach of contract claim that is premised on the breach of the written terms of the Agreements. In response to the instant motion, Petri maintains that he formed an oral agreement with Featherstone

6

regarding the interest on the Accounts. However, Petri admits that in regard to the interest on the Accounts, he entered into the written Agreements. Thus, the extrinsic evidence such as allegedly oral representations would be barred by the parole evidence rule.

Petri argues that he can introduce extrinsic evidence under an exception to the parole evidence rule. Petri relies upon *Goodwine State Bank v. Mullins*, 625 N.E.2d 1056 (Ill. App. Ct. 1993), which provides that an exception to the parole evidence rule exists "where one party alleges the parties reached an agreement, but due to a mistake, the written contract between the parties does not reflect the true agreement of the parties." *Id.* at 1068. However, in *Goodwine*, the court was addressing a reformation action states that "in a reformation action, extrinsic evidence in the form of the agreement of the parties . . ., is admissible to show that the written contract . . . does not express the true agreement of the parties." *Id.* In the instant action Petri is not bringing a reformation claim. Nor do the undisputed facts in this case indicate that a mistake was made in the preparation of the written agreement. The undisputed facts show that the standard promotional rate for accounts of that type was a 1% rate for a 90-day period. (RSF Par. 8-9). The undisputed facts also indicate that Petri signed the signature cards for Agreements, agreeing in writing to be bound by the Agreements, which did not require a 1% rate after 90-days. (RSF Par. 8-9, 16, 25). Petri further admits that he read the signature cards before signing them. (RSF Par. 16, 25).

At best, the undisputed facts perhaps indicate possible subjective confusion on the part of Petri. It is undisputed that Petri was mailed disclosures shortly after opening the accounts specifically informing him in writing that he would receive the promotional interest rate only for a 90-day period. (RSF Par. 19-20, 27-29). Petri admits that he viewed statements for the accounts and thought that a "0.01% interest rate" was equal to a 1.00% interest rate. (RSF Par. 43). Petri also admits that he discarded mail sent to him regarding the accounts because the statements related to checking accounts and he did not realize that he had opened checking accounts at PNC. (RSF Par. 42). It is also undisputed that until the day of his deposition in this case, Petri thought that all three of his accounts had earned 1% interest, even though it is now undisputed even by Petri that the 8195 Account should have never earned 1% interest since its inception . (RSF Par. 40). It is undisputed that the 8195 account was never eligible even for the 1% promotional rate. (RSF Par. 40, 41). The undisputed facts thus indicate that Petri perhaps did not understand what he was doing when opening the accounts at PNC.

The undisputed facts, however, also show that Petri did little to correct any confusion he might have had after opening the accounts. It is undisputed that Petri was regularly mailed statements explaining the interest on the accounts, but discarded the statements. (RSF Par. 36). The undisputed facts also show that Featherstone repeatedly attempted to contact Petri to discuss his accounts, but Petri either asked her to call back, or did not answer the phone or respond to Featherstone's voicemail message. (RSF Par. 14). Inexplicably, Petri claims that

"by signing the signature cards," he understood terms that were different than those indicated in writing on the signature cards. (SAF Par. 50). Although Petri may have been subjectively confused as to the interest rate for his accounts, he chose to sign the Agreements, which provided him with information relating to the interest rates. PNC is not responsible for Petri's lack of diligence and Petri is bound by the written agreements he chose to sign. Therefore, PNC's motion for summary judgment on the breach of contract claims is granted.

II. Unjust Enrichment Claim

PNC argues that Petri cannot pursue an unjust enrichment claim premised on the same facts as the breach of contract claims. Under Illinois law, an unjust enrichment claim is "based upon an implied contract," and thus, if "there is a specific contract that governs the relationship of the parties, the doctrine has no application." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 742 (7th Cir. 2017)(internal quotations omitted)(quoting *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014)). PNC is correct that according to Petri's own complaint, the relationship between PNC and Petri regarding the accounts and interest earned on the accounts was governed by the Agreements. Petri thus cannot recover under an unjust enrichment theory. Therefore, PNC's motion for summary judgment on the unjust enrichment claim is granted.

III. Fraud Claims

PNC moves for summary judgment on the fraud claims. The crux of Petri's fraud claims is that he understood oral statements from Featherstone to mean that Petri was going to earn 1% interest on all his deposits indefinitely. It is not apparent why Featherstone would make such a representation since it is undisputed that the 1% promotional rate was a standard package at PNC for all customers and it is undisputed that the 8195 Account was not even eligible for the promotional rate. It is also undisputed pursuant to Local Rule 56.1 that Featherstone specifically explained to Petri when he opened the accounts that the 1% rate would expire after three months. (RSF Par. 13).

The court notes that even if it was not undisputed that Featherstone informed Petri that the 1% rate was only for 90 days, Petri could not prevail on his fraud claims. The undisputed facts show that aside from any statement allegedly made by Featherstone that Petri was informed repeatedly in writing that the 1% rate was a 90-day promotional rate. Nor does Petri even represent in his own statement of facts that Featherstone affirmatively represented to him that he would receive the 1% rate more than 90 days. Petri merely asserts that Featherstone "confirmed that a 1% interest rate would be available," and that there was not "mention of receiving any rate below 1% on any of the three accounts." (SAF Par. 47-48). The oral statements allegedly made by Featherstone were also according to Petri made before he admittedly read and signed the signature cards. Petri fails to point to any evidence that would indicate trickery on the part of PNC that would have inhibited him from understanding what was going on during the transactions. Petri does not point to

evidence that he was coerced into signing the signature cards. He admits that he read the cards and voluntarily signed the cards.

Petri claims that "[o]nly upon inquiry by Plaintiff in early-2016 did Ms. Featherstone state that the interest rate quoted to Plaintiff of 1% was only offered for an initial 90-day period." (SAF par. 54). Petri appears to insinuate that PNC purposefully remained silent as to the interest on the accounts to trick Petri and PNC planned to spring the new terms on Petri when he finally discovered the alleged ruse. The undisputed facts, however, show that after Petri opened the accounts, PNC regularly informed Petri by mail about the current and future interest on his accounts and that Featherstone repeatedly attempted to contact Petri to discuss his accounts, but had no success in reaching him. Petri in fact admitted that he travels extensively for months at a time and that his mail is collected for him at the post office during such times. (RSF Par. 4-5). Thus, Petri's alleged confusion as to the interest on his accounts would likely have been corrected had he bothered to take an interest in the accounts prior to early 2016. Petri has failed to point to sufficient evidence that would enable a reasonable trier of fact to find any fraud on the part of PNC. Therefore, PNC's motion for summary judgment on the fraud claims is granted.

## CONCLUSION

Based on the foregoing analysis, PNC's motion for summary judgment is granted.

*Samuel Der-Yeghiayan*

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 15, 2018